IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**MARSHALL L. WALLS, SR.**                                                          **PLAINTIFF**

**V.**                          **NO: 4:07CV00934**

**ARKANSAS SECRETARY OF STATE,**
**CHARLIE DANIELS, In his Official**
**Capacity as ARKANSAS**
**SECRETARY OF STATE**                                                         **DEFENDANTS**

## ORDER

Pending is Defendants' motion for summary judgment. (Docket # 22). Plaintiff has responded. For the reasons set forth herein, Defendants' motion is granted.

Facts

Plaintiff, Marshall L. Walls, Sr., ("Walls") filed suit against Defendants alleging violations of Title VII of the 1964 Civil Rights Act, 42 U.S.C. §2000e, et. seq. ("Title VII") and 42 U.S.C. §1983 ("§1983"). Defendant, Charlie Daniels ("Daniels") is the Secretary of State for the State of Arkansas. Walls began his employment with the Secretary of State's office as a Custodian I on September 28, 1992. Walls job description and duties were to empty trash and dust mop all the floors at the Arkansas State Capitol. There were two custodial shifts at the Capitol. Walls worked the night shift with about ten or eleven other employees. The racial make up of Walls' shift was about "fifty/fifty" black and white. The night shift supervisor was Clem Gottspooner ("Gottspooner"). Gottspooner's supervisor was Gene Owens ("Owens"). Owens was the supervisor for both the day and night shifts.

Walls testified that he was moved to a Custodian II and received a pay raise in 1997, but his Complaint alleges that this occurred in 1999. Walls testified that he drove the

shuttle van when the driver was on vacation and he frequently drove the van to the prison in Wrightsville, Arkansas to pick up inmates and bring them back to the Capitol to help clean the grounds.

On November 25, 2005, Gottspooner told Walls that Steve Brummett ("Brummett") wanted to meet with him. Brummett is the Director of Buildings and Grounds for the Secretary of State.  Brummett, Walls and Gottspooner met informally outside the Capitol. Walls had never met with Brummett or discussed anything with him prior to this meeting.  Brummett told Walls that a guard at the Wrightsville prison made a complaint against him. Defendants claim that Walls began to talk over Brummett and stated that the guard had been "keeping him down there for two hours."  Walls denies that he spoke over Brummett, but states that when he tried to explain the problem, Brummett told Walls "shut up while I'm talking." Walls remarked to Brummett, "my mouth is cut crossways, just like yours." Walls stated that Brummett began to "turn real red and he ran up to his cousin [Daniels]."  Walls said Brummett was "scared like [Walls] was gonna hit him, cause he turned real red." Walls thought Brummett might try to get him removed from van duty.  There was no yelling, cursing or name calling during Walls' November 25, 2005 meeting with Brummett.  This meeting lasted about ten (10) to fifteen (15) minutes.  Walls did not know Brummett prior to the meeting and had no other conversations or meetings with Brummett after this meeting.  Brummett and Walls never discussed race or discrimination.

Walls never had any problems with his supervisors, Gottspooner or Owens.  Walls' supervisors never yelled at him or cursed him.  Walls experienced no change in his employment after his meeting with Brummett.

On November 28, 2005, Walls requested a meeting with Daniels because he heard that Brummett "complained on him." Walls had no prior contact with Daniels and claims he only met Daniels this one time. Daniels agreed to meet with Walls and hear his side of the story. Walls testified that five (5) or six (6) Caucasian supervisors attended the November 2005 meeting. Walls identified Cathy Bradshaw, Brummett, Gottspooner and Daniels, but he testified that others were also present. Walls had not been disciplined for the events about which Brummett complained prior to this meeting. Walls told Daniels that Brummett yelled at him and that his face turned red and that he thought this was an act of discrimination. Walls testified that he could tell that Brummett harbored discriminatory animus towards him because of Brummett's body language and the way he was talking. Walls testified that Daniels told him that there is no discrimination in this department and called Walls a troublemaker. Daniels told Walls he could not get along with anyone. According to Walls, Daniels said, "If I was you, I'd resign right now." The November 28, 2005 meeting lasted about fifteen (15) minutes. After this meeting Walls was not reprimanded, disciplined, written up or suspended. Walls testified that his employment continued like it had before, without change or interruption. Walls was not demoted, his pay did not change, and his job duties remained the same.

Walls did not experience any adverse employment action through the remainder of 2005 until his termination on May 10, 2007. Defendants claim that on or about May 7-8, 2007, several employees filed complaints against Walls for engaging in inappropriate behavior. Johnny Maxon ("Maxon"), one of Walls' African-American co-workers, submitted a written complaint claiming that Walls began to call out to him, "You got to move if you are an 'Uncle Tom,' you got to move." "If you are a snitch, you got to move." Maxon reported that Walls was paraphrasing a

3

religious song to belittle Maxon in front of the inmates he was supervising. Maxon also reported that Walls was constantly telling the inmates that Maxon was not a supervisor and that they didn't have to do as they were told by Maxon. He also reported that Walls was continuously instigating friction among his coworkers in an attempt to create racial polarization. Maxon characterized Walls as the "most disruptive entity on the night maintenance crew." Walls states that he was not aware of any complaints filed against him until December 5, 2008.

     Sharon Reedy ("Reedy"), one of Walls' African-American female co-workers, submitted a written complaint that Walls spent most of his time cleaning his car, visiting with another female employee, sleeping, watching television or visiting with the inmates. Reedy also reported sexual harassment from Walls. She reported that Walls began to bump her in the break room one day and cite Bible versus to her regarding lust, fornication and illicit sex. She explained that she was "pretty heated" and told him to stop following her. However, he continued ranting and she finally told him that if he did not leave her alone he was going to be wearing the coffee pot she was holding full of hot coffee. Walls continued to follow after her yelling at her, "When the time comes, Chuck is not going to save you." Walls states that he was not aware of any complaints filed against him until December 5, 2008. Walls also denies that Reedy's complaint mentions sexual harassment. Walls admits that he accidently bumped Reedy's chair, but Reedy was not upset and did not say anything about the incident. Reedy also reported that she felt that Walls was mentally and emotionally unstable and would resort to violence. She stated that this incident was the fourth time Walls had been "out of line" with her and she would like for it to be the last. Walls denies this statement.

     Charles "Chuck" Reel ("Reel"), one of Walls co-workers, filed a written complaint that

4

Walls bumped and harassed Reedy by quoting Bible scriptures directed at her regarding lust and sexual improprieties. According to Reel, Walls continued to harass Reedy until she told Walls that if he didn't stop he would be wearing a coffee pot filled with hot coffee. He also told her that [Reel] was not going to save her. Reel reported that this was not a new problem with Walls, but was intensifying. He described Walls as a "delusional malcontent" that had become obsessed with becoming a supervisor. He reported that Walls was "belligerent, hostile, antagonistic and disruptive." Walls states that he was not made aware of this complaint until December 5, 2008.

On May 10, 2007, approximately seventeen months after his meeting with Daniels, Walls was terminated from his employment. On June 1, 2007, Walls received a letter from Daniels stating that his employment was terminated because he was counseled in 2004 regarding inappropriate behavior, the behavior continued towards other employees, resulting in complaints by those employees to the Human Resource office and that his termination was a direct result of his unwillingness to conform his behavior to the standards of the office. Walls admits that he received this letter but states that he had never been counseled.

On June 7, 2007, Walls filed an EEOC charge which stated that he believed he was discharged from his employment on May 10, 2007 because of his race. On June 13, 2007, Walls "Notice of Suit Rights" letter was mailed but Walls contends that he did not receive it until it was hand delivered to him on July 9, 2007. On October 5, 2007 Walls filed this lawsuit. On October 18, 2007, Walls filed another EEOC charge alleging that he was discharged from his employment on May 10, 2007 because of his race and in retaliation for complaining about discrimination. The "Notice of Suit Rights" letter was mailed to Walls on October 25, 2007.

Walls contends that he was told that he would become the supervisor when Gottspooner

retired. Walls contends that Reel, who is white, was allowed to perform his job duties in a poor fashion, without being disciplined or counseled in any way. Walls also believes Jim Blackwood, a white Custodian I, received favorable treatment.

Walls did not meet with Daniels again after his November 2005 meeting. Walls never met with Brummett again after his November 2005 meeting until his termination. Neither Daniels nor Brummett ever harassed Walls. No one called Walls names or treated him any differently than he had been treated since he began his employment with the Secretary of State's Office. Walls is not aware of any other employee, white or black, who was terminated for harassment. Walls is not aware of any other employee, white or black, who has had written complaints of harassment filed against them. Walls could not identify any employee, white or black, who had to be counseled regarding their disruptive behavior. Walls claims that he was never counseled for any type of behavioral issue.

Defendants claim that Walls is the only custodian, white or black, who has been fired by Daniels for unwillingness to conform his behavior to the standards of the office. Walls denies that he was terminated for this reason.

Defendants claim that Walls is the only custodian, white or black, to have such complaints filed against him by his co-workers and/or supervisors. Defendants claim that a memo from Cathy Bradshaw, Daniels' Chief of Staff, reflects that Walls was also counseled in December of 2004 regarding complaints about his behavior. Walls denies this statement and claims that the memo was contrived, he was never counseled for any type of disciplinary action, and he first met Ms. Bradshaw on November 28, 2005.

Defendants argue that the undisputed facts, even when viewed in the light most favorable

to Walls, establish that there are no genuine issues of material fact remaining to be decided and Defendants are entitled to judgment as a matter of law.

## Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted)(brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

<u>Discussion</u>

On April 18, 2008, the Court entered an Order granting in part and denying in part Defendants' motion to dismiss. Pursuant to that Order, Walls §1983 claims against Charlie Daniels in his official capacity for prospective injunctive relief and Title VII claim against the Secretary of State remain. Walls' discrimination claims asserted pursuant to § 1983 and Title VII "are analyzed under the burden-shifting framework set forth in McDonnell Douglas." *Clegg v. Arkansas Dept. of Correction,* 496 F.3d 922, 926 (8th Cir. 2007).

In an action alleging discriminatory discharge, under the McDonnell Douglas framework, a plaintiff first must establish a *prima facie* case by showing that he: (1) is a member of a protected group; (2) was meeting the legitimate expectations of the employer; (3) suffered an adverse employment action; and (4) under circumstances permitting "an inference of discrimination." *Zhuang v. Datacard Corp.*, 414 F.3d 849, 854 (8th Cir.2005). If the plaintiff establishes a prima facie case, the defendant must articulate a legitimate, nondiscriminatory reason for the action. *Johnson v. Ready Mixed Concrete Co.,* 424 F.3d 806, 810 (8th Cir.2005). If the defendant does so, the plaintiff must offer evidence showing that the defendant's legitimate reason is merely a pretext for discrimination. *Id.*

The Court finds that Plaintiff has failed to establish a prima facie case of discrimination because he has failed to demonstrate that his termination occurred under circumstances which

permit an inference of discrimination. Additionally, the Defendants have articulated legitimate business reasons for their decision and Plaintiff has failed to prove pretext.

Plaintiff relies on the facts that he complained of race discrimination seventeen months before his termination; when he did so Daniels became upset; and that two Caucasian individuals were allegedly treated more favorably, to support his claim that his termination was race based. The record demonstrates that Walls' supervisors never yelled at him or cursed him and he experienced no change in his employment after his meeting with Brummett in November, 2005. Walls was not reprimanded, disciplined, written up or suspended after he met with Daniels in November, 2005. Walls testified that his employment continued like it had before, without change or interruption. Walls was not demoted, his pay did not change, and his job duties remained the same. Further, Walls was terminated after complaints from his co-workers alleging harassing, rude and hostile behavior. Walls has offered no evidence other than speculation or conjecture to substantiate his allegations that his termination was based on his race.

Defendants state that Plaintiff was terminated because he exhibited inappropriate, unprofessional conduct toward his co-workers, this behavior occurred on several occasions and Walls failed to conform his behavior to the standards of the office. Courts are not permitted to second-guess an employer's personnel decision or to correct an unwise decision if the employer gives an honest, nondiscriminatory explanation for its decision. *Gill v. Reorganized Sch. Dist R-6*, 32 F.3d 376, 379 (8th Cir. 1994). Even if the decision makers were wrong in their conclusions, there is still no basis for recovery for discrimination. *Scroggins v. Univ. of Minn*, 221 F. 3d 1042, 1045 (8th Cir. 2000) (the relevant inquiry is whether the defendant believed the plaintiff was guilty of the conduct justifying the discharge, not whether he was actually guilty).

Walls failed to offer evidence which demonstrates that the stated reason for his discharge was a pretext for retaliation or discrimination.

At all times, Plaintiff bears the burden of proving that he was illegally discriminated against on the basis of race.  *See, Rose-Matson v. NME Hospitals, Inc*. 133 F.3d 1104 (8th Cir. 1998).  Although instances of disparate treatment can support a claim of pretext, a plaintiff has the burden of proving that he and the disparately treated employees were "similarly situated in all relevant respects."  *Harvey v. Anheuser-Busch, Inc*., 38 F. 3d 968, 972 (8th Cir. 1994).   *Forrest v. Kraft Foods, Inc*., 285 F.3d 688, 691-92 (8th Cir. 2002).  To show that he was similarly situated Plaintiff must establish that he was treated differently from those employees whose violations were of comparable seriousness.  *Williams v. St. Lukes- Shawnee Mission Health Sys*., 276 F. 3d 1057 (8th Cir. 2002), *see also, Jackson v. Rheem Mfg. Co.,*  94 Fed.Appx. 400, 401 (8th Cir. 2004)(employees are similarly situated when they are involved in same offense but are disciplined in different ways; to be probative evidence of pretext, misconduct of more leniently disciplined employees must be of comparable seriousness).

Plaintiff argues that he was treated differently from Reel and Blackwood.  However, Plaintiff admits that no other employee had complaints of harassment filed against them or had to be counseled because of disruptive behavior.   Accordingly, these employees cannot be considered similarly situated.

In order to establish a prima facie case of retaliation, Walls must demonstrate that  he engaged in protected activity, that an adverse employment action occurred, and that there was a causal connection between the two.  *Hoffman v. Rubin*, 193 F.3d 959 (8th Cir. 1999).  Plaintiff has failed to establish a nexus between his complaint to Daniels on November 25, 2005 and his

termination on May 10, 2007. The seventeen month period between Walls' complaint and termination weakens an inference of retaliatory motive. *See Shanklin v. Fitzgerald*, 397 F. 3d 596, 604 (8th Cir.2005) (holding that the plaintiff failed to establish causal connection where ten months elapsed between the plaintiff's discrimination charge and her subsequent discharge). Further, Plaintiff admits that he was not demoted, suspended, reprimanded or terminated following the 2005 meeting. During the intervening period of time between his complaint to Daniels and his termination, Defendants received several complaints from Walls co-workers reporting, rude, harassing and insulting behavior. "Although contesting an unlawful employment practice is protected conduct, the anti-discrimination statutes do not insulate an employee from discipline for violating the employer's rules or disrupting the workplace." *Kiel v. Select Artificials, Inc.*,169 F.3d 1131, 1136 (8th Cir. 1999). Accordingly, Plaintiff failed to establish a prima facie case of retaliation.

For these reasons, the Court finds that Defendant's motion for summary judgment should be and hereby is GRANTED.

IT IS SO ORDERED this 4th day of March, 2009.

_____
James M. Moody
United States District Judge